UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SAMUEL TOLIVER,

                Plaintiff,

v.                                                   9:18-CV-1420
                                                                        (DNH/ATB)
KARA ADNER,

                Defendant.

---

SAMUEL TOLIVER, Plaintiff, pro se
NICHOLAS ZAPP, Asst. Attorney General, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge. Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant Adner falsified a misbehavior report and violated his Fourth Amendment rights. (Complaint ("Compl.") at 12, 15) (Dkt. No. 1).

Presently before the court is defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to exhaust administrative remedies. (Dkt No. 16). Plaintiff responded in opposition to the motion. (Dkt. No. 18). Defendant filed a reply, and plaintiff filed a sur-reply.[1] (Dkt. Nos. 19, 20). For the following reasons, this court agrees with defendant and recommends dismissal of plaintiff's complaint.

**I.**    **Motion to Dismiss**

    **A.**    **Legal Standards**

To survive a motion to dismiss for failure to state a claim, a complaint must

---

[1] Plaintiff's sur-reply was not authorized by the court.

contain sufficient factual matter to state a claim that is "plausible on its face" when taken as true. *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955 (2007). Though all facts are read in the light most favorable to the non-moving party, "threadbare recitals of the elements of a cause of action, supported by mere conclusory elements, do not suffice." *Id.* When considering a motion to dismiss pursuant to Rule 12(b)(6), the court limits its consideration to the complaint and documents attached thereto as exhibits or incorporated thereto by reference. *Portillo v. Webb*, No. 16 Civ. 4731, 2017 WL 4570374, at *1 (S.D.N.Y). These documents must be sufficient to "nudge" plaintiff's claim "across the line from conceivable to plausible," or the claim must be dismissed. *Twombly*, 127 S.Ct. at 1960.

    **B.**    **Application**

In this case, the plaintiff has attached a substantial number of documents to his complaint, including his misbehavior report, and the disposition thereof. (Compl. Exs. A, C). Plaintiff has attached letters that he wrote to various recipients regarding allegedly contaminated food, including the letter that became the subject of the disciplinary hearing. (Compl. Ex. B). One of plaintiff's letters references a grievance that several inmates allegedly filed, complaining about contaminated food. (*Id.*). Plaintiff has also attached a grievance that he filed on May 22, 2017, complaining about an officer who allegedly used profanity against plaintiff when he complained about dirty trays. (Compl. Ex. C at 4). Plaintiff has also attached a copy of Department of Corrections and Community Supervision ("DOCCS") Directive No. 4422, governing the Inmate Correspondence Program. (Compl. Ex. D). Because plaintiff has attached these documents to the complaint, the court may consider them in analyzing the

defendant's motion to dismiss.

## II.     Facts

Judge Hurd previously summarized the facts as alleged by plaintiff. (Dkt. No. 8 at 5-7). On May 30, 2017, while confined at Riverview Correctional Facility ("Riverview C.F."), plaintiff attempted to mail a stamped, confidential complaint/petition to the Federal Drug Administration ("FDA") and to the New York State Department of Health.  In the letter, he alleged he had been served contaminated, raw, and spoiled food, and he included a "sample" of the food for testing. (Dkt. No. 8 at 5-6).  On that day, defendant Adner intercepted, opened, and read plaintiff's mail when she noticed the envelope "secreting." (Dkt. No. 8 at 6). The mail was confiscated, copied, and destroyed by defendant. (*Id.* at 6).  Defendant issued a Tier III misbehavior report, charging plaintiff with smuggling, misuse of state property, unhygienic act, contraband, and a violation of correspondence procedures. (Compl. Ex. A; Dkt. No. 19, Exhibit B).[2] Plaintiff claims the misbehavior report was false. *Id.*

At the conclusion of the resulting disciplinary hearing, plaintiff was sentenced to sixty days in the Special Housing Unit ("SHU") with a corresponding loss of recreation, commissary, packages, and telephone privileges.  Plaintiff appealed the disposition, but it was affirmed by the Acting Director of the SHU. (Dkt. No. 8 at 6-7, Def.'s Ex. A (Dkt. No. 19)).

In the complaint, plaintiff also alleged that other defendants conspired with defendant Adner to falsify the misbehavior report and confine him to the SHU. The

---

[2] As stated above, plaintiff attached a copy of the misbehavior report to his complaint. However, it is difficult to read because the quality of the copy is poor.  Defendant has attached a legible copy of the misbehavior report to his reply papers. (Def.'s Ex. B) (Dkt. No. 19).

3

other defendants and the conspiracy claims were dismissed by Judge Hurd. (Dkt. No. 8 at 34). Judge Hurd also dismissed claims asserting unconstitutional conditions of confinement in SHU. (Dkt. No. 8 at 2-7). The only claims to survive Judge Hurd's initial review, were plaintiff's allegation that defendant Adner falsified the misbehavior report against him in retaliation for his complaint to the FDA, and his claim that the defendant violated plaintiff's Fourth Amendment rights by opening his mail. (*Id.* at 34).

### III. Exhaustion of Administrative Remedies

#### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in

accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the

administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 656 F. App'x at 580-81. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

**B.    Application**

In this case, plaintiff does not allege that the grievance process was "unavailable" to him due to any of the circumstances outlined in *Ross*, nor does he allege that the procedure was too confusing, as the inmate in alleged *Williams*. *See Ross*, 136 S. Ct. at 1859-1860; *Williams* 829 F.3d at 119. Rather, plaintiff cites two

reasons that he believes he is exempt from utilizing the grievance procedure. Plaintiff alleges first, that the appeal of his disciplinary hearing sufficed to exhaust his remedies against defendant. In the alternative, plaintiff alleges that his transfer to another facility exempts him from filing a grievance. Neither argument has merit.

### 1. Disciplinary Appeal

Plaintiff argues that the result of the disciplinary hearing is not "grievable." (Dkt. No. 18-3, Pl.'s Ex. C at 21) (citing DOCCS Directive. No. 4040; 7 NYCRR § 701.3(e)(1), (e)(2)). Although plaintiff is correct that the "result" of the disciplinary hearing is not grievable because the disciplinary proceeding has its own appeal mechanism, plaintiff is **not** challenging the due process related to the result of the disciplinary hearing. He is challenging defendant Adner's alleged retaliation in issuing the misbehavior report against plaintiff, and her conduct in opening his mail.

The grievance process applies to all claims of retaliation and staff misconduct which are related to incidents giving rise to inmate discipline. *Waters v. Melendez*, No. 15-CV-805, 2018 WL 3079764, at *6 (N.D.N.Y May 18, 2018); *Scott v. Gardner*, 287 F. Supp. 2d 477 (S.D.N.Y. 2003).  The grievance process is separate from the process of appealing the outcome of a disciplinary hearing, and an inmate "cannot adequately exhaust his remedies for PLRA purposes through his administrative appeal of the hearing decision; he must separately grieve the [defendant's] alleged misconduct . . . ." *Kimbrough v. Fischer*, No. 9:13-CV-100, 2014 WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014) (quoting *Rosales v. Bennett*, 297 F. Supp. 2d 637, 639 (W.D.N.Y. 2004)), *(Rep't Rec), adopted*, 2016 WL 660919 (N.D.N.Y. Feb. 18, 2016). *See also Barker v.*

*Smith* No. 16-CV-76, 2017 WL 3701495, at *7 (S.D.N.Y. Aug. 24, 2017) (and cases cited therein).

In *Waters,* the inmate alleged that the defendant had falsified a misbehavior report, charging plaintiff with taking compensation for law library services in retaliation for the plaintiff's filing of a Prison Rape Elimination Act action against another officer. 2018 WL 3079764, at *3. Plaintiff was found not to have exhausted all administrative remedies because he did not file a grievance against the defendant, separate from exhausting his disciplinary appeals. *Id.* at *8. *See also Crosby v. LaValley,* No. 9:15-CV-1125, 2017 WL 7050647, at *2, 7 (N.D.N.Y. Dec. 15, 2017) (a separate grievance was required with respect to plaintiff's claim of retaliation involving an assault by correction officers and the subsequent issuance of a false misbehavior report to cover up the assault, even though plaintiff appealed the result of his disciplinary hearing).

In *Barker*, the plaintiff alleged that the defendant falsified a misbehavior report, stating plaintiff was responsible for an attack on another inmate (for which plaintiff was adjudicated responsible at a disciplinary hearing). Plaintiff was found not to have satisfied the PLRA's exhaustion requirement by asserting allegations of misconduct against the defendant at his disciplinary hearing and appealing the result of that hearing, as he was required to file a separate grievance. *Barker v. Smith*, 2017 WL 3701495, at *3. Simply put, "allegations of staff misconduct related to the incidents giving rise to the discipline *must be grieved*." *Waters*, 2018 WL 3079764 at *8 (quoting, inter alia, *Barker*, *supra*; *Scott*, 287 F. Supp. 2d 477 at 489) (emphasis added).

8

### 2. Transfer

Plaintiff also argues that he does not need to separately grieve his allegations against defendant to satisfy the exhaustion requirement because he was transferred from Riverview C.F. to Gouverneur Correctional Facility ("Gouverneur C.F."). (Dkt. No. 18 at 4). Plaintiff interprets Directive 4040's definition of an "institutional grievance" ("a grievance in which the grievant is only affected as long as he or she remains a resident of the facility") to mean that he did not need to file a grievance against defendant because he was subsequently transferred from Riverview C.F. *Id.* at 4. Plaintiff's interpretation of the regulations is incorrect.

The court would first note that plaintiff's grievance against Defendant Adner would likely have been a "Harassment Grievance," not an "Institutional Grievance." *See* 7 NYCRR § 701.2 (c), § 701.2 (e). In any event, the transfer of an inmate does not necessarily negate the necessity to file a grievance. *Rodriguez v. Senkowski*, 103 F. Supp. 2d 131, 134 (N.D.N.Y. 2000). The issue is whether the grievance process would have been "available" to the plaintiff either at Riverview or at Gouverneur. *Williams, supra.*

In this case, plaintiff had 21 days to file a grievance against defendant Adner under the regulations cited above. Twenty-one days from May 30, 2017 was June 20, 2017. Plaintiff was still at Riverview C.F. on June 20, 2017. In fact, on June 22, 2017, while he was still at Riverview C.F., plaintiff signed the appeal of a related grievance that he filed on May 22, 2017, in which complained about the food in the mess hall that ultimately led plaintiff to mailing the letter containing the "sample." (Compl. Exh. C at 4). His deadline to file a grievance about the incident involving defendant Adner

9

would have expired prior to his transfer, thus, plaintiff had ample time to file a grievance before his transfer. At that time, the regulations provided that "[a]n inmate transferred to another facility may continue an appeal of any grievance."[1] 7 NYCRR § 701.6(h)(2). Thus, plaintiff's argument that a grievance or an appeal was unavailable because he was transferred is distinguishable from *Williams* and is meritless. *See also Rodriguez v. Westchester Cty. Jail Corr. Dep't Assoc.*, No. 98 Civ. 2743, 2002 WL 1933953, at *3 (S.D.N.Y. Aug. 21, 2002) (finding that the plaintiff had ample time to file a grievance notwithstanding his subsequent transfer) (other citations omitted).

## IV.  Dismissal

The Second Circuit has stated that "failure to exhaust administrative remedies is often a temporary, curable procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit . . . ." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (quoting *Snider v. Melindez*, 199 F.3d 108, 111-112 (2d Cir. 1999)). Thus, where a claim is dismissed for failure to exhaust, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry*, 366 F.3d at 87.

However, if a prisoner has failed to exhaust available administrative remedies, and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *Id.* at 88. The court in *Hilbert v. Fischer*, No. 12 Civ. 3843, 2013 WL 4774731, at *7 (S.D.N.Y.

---

[1] The prior regulation did not allow such an appeal after transfer. *See Land v. Kaufman*, No. 07 Civ. 8070, 2009 WL 1106780, at *3 (S.D.N.Y. Apr. 23, 2009) (discussing prior law).

Sept. 4, 2013), explained why, in circumstances essentially the same as in this case, the dismissal of plaintiff's claims for failure to exhaust, well after the DOCCS deadlines for filing grievances or requests for late filing have expired, should be with prejudice:

> [New York] [p]risoners have 21 days from the date of the alleged occurrence to initiate the first formal step of the IGP, subject to exceptions "based on mitigating circumstances." 7 NYCRR §§ 701.5(a)(1), 701.6(g)(1)(i)(a). However, an exception to the time limit may not be granted if the request is made more than 45 days after the alleged occurrence. 7 NYCRR § 701.6(g)(1)(i)(a). Accordingly, because the time to both file a grievance and request an exception to the time limit has long expired, and because Plaintiff has not offered any reason for his delay in filing a grievance with respect to his deliberate indifference claim, the claim is dismissed with prejudice.

*See also Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (upholding dismissal of a civil rights action with prejudice where the time permitted for filing a grievance had expired because "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies" (citation omitted). In this case, it is clear the plaintiff has failed to exhaust his administrative remedies, and that the time for him to file a grievance has long since expired. Thus, the court may dismiss this action against defendant Adner with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion to dismiss (Dkt. No. 16) be **GRANTED**, and that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

11

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: June 3, 2019

*Andrew T. Baxter*
Hon. Andrew T. Baxter
U.S. Magistrate Judge